```
          IN THE UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF ARKANSAS
                    EL DORADO DIVISION
```

**CHARLES D. LOTT, DEBTOR IN POSSESSION**                          **APPELLANT**

       **v.**               **Civil No. 06-1059**

**SPONER LAND, LTD.**                                               **APPELLEE**

### O R D E R

    Now on this 2nd day of February, 2007, comes on for consideration the captioned matter, and from the briefs of the parties and the record on appeal, the Court finds and orders as follows:

    1.   This is an appeal from the United States Bankruptcy Court for the Western District of Arkansas, by a Chapter 11 Debtor in Possession, Charles D. Lott ("Lott").  The Bankruptcy Court granted one of Lott's creditors, Sponer Land, Ltd. ("Sponer") relief from the automatic stay of **11 U.S.C. §362,** so that Sponer could go forward with efforts to evict Lott from leased premises (the "Property") owned by Sponer, so that Sponer can sell the land.

    2.   Four issues are presented:

    \*   Did the Bankruptcy Court exceed its jurisdiction by granting relief from the automatic stay because proper notice of the motion seeking such relief was not given as required by the Bankruptcy Rules?

    \*   Did the Bankruptcy Court err in concluding that the

        Debtor in Possession held the Property in question under a month to month lease?

\*    Did the Bankruptcy Court err in concluding that the right of the Debtor in Possession to purchase the Property was barred by the Statute of Frauds?

\*    Did the Bankruptcy Court err in ruling that the Debtor in Possession had no equity in the Property and it was not necessary to his reorganization?

3.    This Court's jurisdiction arises pursuant to **28 U.S.C. §158(a)(1).** The Court reviews the legal conclusions of the Bankruptcy Court *de novo*, and reviews its findings of fact under the "clearly erroneous" standard. **In re Reynolds, 425 F.3d 526, 531 (8th Cir. 2005).**

4.    The facts relevant to decision are as follows:

In May, 2002, Lott and Sponer entered into a Lease Agreement (With Option To Purchase) (the "Lease") whereby Lott would lease the Property for a two-year term at $8,000 per year, with an option to purchase it for $250,000. The original term of the Lease was from May 6, 2002, until May 6, 2004.

The Lease provided, with regard to the option, that "[a]t any time during the original term of this lease, Lessee shall have an exclusive option to purchase the property by giving written notice to Lessor of Lessee's intention to exercise this option. . . . In the event this option is exercised and Lessee purchases the

property, then all lease payments made to date of purchase shall be credited towards the purchase price."  No signed copy of the Lease is in evidence, but Lott's attorney acknowledged at the hearing that there was such a copy in existence, and there was no dispute that the document introduced at the hearing was an accurate, although unsigned, copy of the Lease.

The Property is acreage used to pasture cattle and cut hay, and also has a dwelling on it.

Lott paid the $8,000 rental in full at the beginning of each year during the original term of the Lease.  He lived on the Property with his family, and made improvements to it, but did not exercise the option to purchase.  His adult sons ran cattle on the land.

In May, 2004, Sponer sent Lott a written contract to purchase the Property for $250,000, but Lott did not sign it.  Instead, he held over the lease, and began paying $12,000 a year, which he paid at the rate of $1,000 per month.

In August, 2005, Sponer listed the Property for sale with a real estate agent.  The agent posted a sign on the Property, advertised the Property in the newspaper, and began to bring prospective buyers to look the Property over.

One prospective buyer was Michael Suttle. Suttle visited the Property twice while making up his mind whether to buy it, and talked with both Lott and his wife.  Neither Lott nor his wife

said anything to Suttle about Lott having an option to purchase or a right of first refusal as to the Property.

On November 25, 2005, a contract for sale of the Property was executed between Sponer and Suttle.  Closing was set for January 7, 2006.

Sponer sent Lott a Notice To Vacate by December 31, 2005, and also had the County Sheriff serve a Notice To Vacate.  The Sheriff's notice was served on December 7, 2005;  the mailed notice was received on December 8, 2005.

On December 12, 2005, Lott filed a Chapter 11 Petition for bankruptcy.

On January 19, 2006, Sponer filed a Motion For Relief From Stay.  A hearing was held on February 21, 2006, following which the Bankruptcy Court granted the motion *ore tenus*.  The Bankruptcy Court held that when the Lease ended by its terms in May of 2004, Lott became a holdover tenant with a month-to-month tenancy and any agreement with regard to a right to purchase after that would be unenforceable pursuant to the Arkansas Statute of Frauds.  The Bankruptcy Court further found that no improvements were made on the strength of an oral promise to sell -- which would take the matter out of the Statute of Frauds -- because all of the improvements were made while the written Lease was in effect and were, therefore, made in reliance on the written rather than the oral agreement of the parties.  The Bankruptcy Court further found

that the Notice To Vacate was given before Lott's bankruptcy petition was filed, and more than thirty days before the planned eviction, leading to the conclusion that Lott had no equitable interest in the Property.  The Bankruptcy Court therefore granted Sponer relief from the automatic stay, allowing it to evict Lott from the Property.

This ruling was formalized by Order dated March 9, 2006, and Notice of Appeal was filed on March 10, 2006.

5.   Lott first argues that the Bankruptcy Court exceeded its jurisdiction by granting relief from the automatic stay because proper notice of the motion seeking such relief was not given as required by the Bankruptcy Rules.  **Rule 4001(a)(1)** provides that a motion for relief from an automatic stay "shall be made in accordance with Rule 9014 and shall be served . . . if the case is . . . a chapter 11 reorganization case and no committee of unsecured creditors has been appointed pursuant to §1102, on the creditors included on the list filed pursuant to Rule 1007(d). . . ."  **Rule 1007(d)** requires a Chapter 11 debtor to file a list of the creditors holding the twenty largest unsecured claims.

The Certificate Of Service on the Motion For Relief From Stay reflects that it was served by mail only upon Lott's attorney and the Chapter 11 Trustee.  The electronic file-mark reflects service on those individuals, as well as Sponer's attorney and on Claude Hawkins (representing the IRS), Maurice Rogers (representing Deere

& Company), Richard Roper (representing First State Bank of Warren), and Jeff Wood (representing Ford Motor Credit Company). The IRS and Ford Motor Credit Company are on Lott's list of creditors holding the twenty largest unsecured claims.

Sponer points out that this argument was raised for the first time after the Bankruptcy Court entered its Order, via a Motion For Continuation Of The Automatic Stay During Appeal filed on March 10, 2006. This was the same date as the Notice Of Appeal, although the Motion (document #85 in the bankruptcy proceeding) was filed after the Notice Of Appeal (document #83) and therefore the issue was, technically, raised for the first time on appeal. That circumstance does not prohibit review of the issue, because the issue is purely one of law and requires no additional factual development. **Orr v. Wal-Mart Stores, Inc.**, **297 F.3d 720 (8th Cir. 2002).**

Sponer also argues that the failure to serve the creditors is not a jurisdictional defect, citing **Henderson v. U.S.**, **517 U.S. 654 (1996).** While the Court does not find **Henderson** helpful, it agrees with Sponer that failure to serve the creditors is not a jurisdictional defect. Lott invoked the jurisdiction of the Bankruptcy Court, and he had notice and an opportunity to appear at the hearing on the motion.

A search of the case law reveals virtually nothing that bears on the issue. **In re Calvert**, **135 B.R. 398 (Bkrtcy.S.D.Cal. 1991),**

cited by Lott, held that failure to serve a motion for relief from stay on the twenty largest unsecured creditors caused the motion to be "procedurally defective," and the motion was denied on that basis, without prejudice.  The Court does not, however, find that case persuasive in the circumstances now before the Court.  As will be seen from the remainder of this opinion, the Court finds that Lott's substantive arguments are without merit, and it would serve little purpose to return this matter to the Bankruptcy Court for the giving of notice to the creditors.  The outcome would be the same, although much money would have been spent and much time lost.  The Court, therefore, concludes that the failure to give notice was, in the circumstances of this case, harmless error.

6.  Lott next argues that the Bankruptcy Court erred in concluding that the Debtor in Possession held the Property in question under a month-to-month lease.  He argues that under Arkansas law, when a tenant under a lease for a term of years holds over and pays rent according to the terms of the lease, he becomes a tenant from year-to-year and his tenancy can only be terminated by the giving of six months' notice.

While this is a correct statement of Arkansas law, the rule is not absolute.  It can be rebutted by proof.  **Heral v. Smith**, **33 Ark.App. 143, 803 S.W.2d 938 (1991).**  In this case, the Court believes that the Bankruptcy Court's finding that Lott became a month-to-month tenant is supported by proof sufficient to rebut

the general rule.  Both Lott and Sponer agree that the method of paying rent changed from an annual payment at the beginning of the year to monthly payments.  This fact strongly suggests that the intent of both landlord and tenant was that there be a month-to-month tenancy after the original term of the Lease expired.  In addition, Lott testified that when he paid his rent in December, 2005, that would have extended his option to purchase "for thirty days, 'til the first of the following month."  While the Court does not agree that the option was extended, for reasons set forth below, the fact that Lott believed he was extending the option on a month-to-month basis by payment of rent is evidence that he had a month-to-month tenancy.

Nor does **A.C.A. §18-16-105** offer Lott any comfort, in providing that the owner of "farmlands which are leased under an oral agreement may elect not to renew the oral rental or lease agreement for the following calendar year by giving written notice . . . on or before June 30, that the lease or rental agreement will not be renewed for the following calendar year."  Lott contends that the Notice To Vacate he received in December, 2005, would entitle him to remain in possession of the Property until December 31, 2007.

The Court does not agree. The statute in question applies to an oral one-year lease and to a tenancy from year to year, **Steele v. Murphy, 279 Ark. 235, 650 S.W.2d 573 (1983),** but neither case

-8-

law nor logic makes it applicable to a tenancy from month to month. Cf. **Plafcan v. Griggs, 291 Ark. 335, 724 S.W.2d 467 (1987)**("the statute only establishes a date when an owner has to give notice to terminate a year to year farm lease").

7.   Lott next argues that the Bankruptcy Court erred in concluding that his right to purchase the Property was barred by the Statute of Frauds, which provides that a contract for the sale of lands must be in writing. **A.C.A. §4-59-101.** Lott contends he was in possession of the Property pursuant to a contract to purchase, and that -- combined with the fact that he made improvements to the Property -- takes the contract for sale out of the Statute of Frauds.

The flaw in this argument is that there was no contract for sale of the Property to Lott.[1]  Lott had an option to purchase the Property, during the original term of the Lease. An option is "a contractual obligation to keep an offer open for a specified period, so that the offeror cannot revoke the offer during that period." **Black's Law Dictionary, Eighth Edition.** Until that offer was accepted by Lott, it did not become a contract for sale, and Lott admittedly never exercised the option. He testified that he made improvements on the expectation that he would exercise the option, but that he never had the financial ability to do so. Nor

---

[1] Charles Sponer testified that even after May, 2004, Lott could have purchased the Property: "if he'd brought me the cash, he could have got it at anytime." Lott seems to interpret this as evidence of an oral contract to sell. The Court deems it merely evidence of Sponer's desire to sell the Property to any willing and able buyer.

is Lott correct in arguing that he has paid part of the purchase price of the land. The Lease only provided that Lott's lease payments would be credited toward the purchase price in the event the option was exercised, and thus his lease payments never became eligible to be so credited.

Most troubling of Lott's arguments on this point is that the Bankruptcy Court's ruling has imposed a forfeiture upon him of the improvements he made to the Property. He points out that equity will seize upon slight circumstances to avoid a forfeiture. However, as the Eighth Circuit has recognized, forfeitures are often a necessity in bankruptcy proceedings, **In re Wieseler**, **934 F.2d 965, 967 (8th Cir. 1991),** and Lott set himself up for the loss by spending money on improvements when he was financially unable to exercise the option to purchase.

8. Finally, Lott contends that the Bankruptcy Court erred in ruling that he had no equity in the Property and it was not necessary to his reorganization. For the reasons set forth in this opinion, the Court agrees with the Bankruptcy Court that at the time Lott received the Notice To Vacate, he was a month-to-month tenant, and none of his lease payments was credited toward purchase of the Property, leaving him without equity in the Property. Nor did Lott have an option to purchase the Property at that point, since the Lease specifically only granted the option for the original term of the Lease. That term had ended in May,

2004.

Lott's argument that the Property is necessary to his reorganization is that "a roof over one's head is necessary in order to have an effective reorganization." He relies on **Matter of Jones**, **119 B.R. 996 (Bkrtcy.N.D.Ind. 1990),** where the court refused to lift the stay to allow sale of a luxury car, even though a less expensive one could be bought, because the car was debtor's only means of transportation and a car was necessary to an effective reorganization. From that, Lott apparently reasons that he should be allowed to remain in possession of the Property, because it is his only place to live, and a place to live is necessary to an effective reorganization.

The Court is not persuaded by this argument. The business which Lott operates, and which will be affected by his reorganization, is a welding operation which is not located on the Property. The cattle on the Property belong not to Lott but to his adult sons. The cost of living on the Property is relatively high when compared to what one might expect to rent dwelling space for, and might in fact detract from the prospect of a successful reorganization. There is no showing that residential rentals are in short supply in the area, or that the dwelling on the Property has some special necessary features (such as handicap access) not readily available in the rental market.

The Court is persuaded that the cases cited by Sponer are

more apropos. See, e.g., **In re Wilks**, 123 B.R. 555 **(Bkrtcy.W.D.Tex. 1991).** The Bankruptcy Court did not err in finding that the Property was not necessary to Lott's reorganization.

**IT IS THEREFORE ORDERED** that the decision of the decision of the United States Bankruptcy Court for the Western District of Arkansas, granting Sponer Land, Ltd., relief from the automatic stay in the Chapter 11 proceedings of Charles D. Lott, is **affirmed.**

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　**/s/Jimm Larry Hendren**
　　　　　　　　　　　　　　　　**JIMM LARRY HENDREN**
　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**